UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARIANA PARDO,

        *Plaintiff,*

– against –

TOMAS INFERNUSO DVM, P.C., *doing business as Animal Surgical Center*; TOMAS INFERNUSO *in his individual and professional capacities*,

        *Defendants.*

**MEMORANDUM & ORDER**
24-cv-00190 (NCM) (ST)

---

**NATASHA C. MERLE**, United States District Judge:

    Before the Court is defendants' partial Motion to Dismiss, ECF No. 38,[1] plaintiff's retaliation claims, counts II, IV, and V of plaintiff's amended complaint, ECF No. 19 ("AC"), with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Mariana Pardo brings this action against Tomas Infernuso DVM, P.C., doing business as Animal Surgical Center ("ASC"), and Tomas Infernuso (together, "defendants") for alleged discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 740 ("Section 740"). The Court heard oral argument on the Motion on September 5, 2024. For the reasons stated below, defendants' Motion is **DENIED**.

---

[1]     The Court hereinafter refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 39, as the "Motion"; plaintiff's Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss, ECF No. 40, as the "Opposition"; and the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 42, as the "Reply."

1

# BACKGROUND

Plaintiff Dr. Mariana Pardo is a veterinarian who was employed as the Emergency and Critical Care Medical Director at defendant ASC from September 2022 to May 2023. AC ¶¶ 1, 8, 36, 121. Prior to her employment at ASC, Dr. Pardo was an emergency veterinarian at another practice in New York. AC ¶ 28. Dr. Pardo has also served as an Intensive Care Unit ("ICU") Head Veterinary Technician, completed internships and a residency in emergency and critical care, and published articles regarding veterinary practice and diversity and inclusion in the profession. AC ¶¶ 24–26.

Defendant Dr. Tomas Infernuso is ASC's founder, owner, and medical director. AC ¶ 10. In 2021, Dr. Infernuso began recruiting Dr. Pardo to develop an Emergency Room ("ER") and ICU at ASC. AC ¶¶ 27–35. In July 2022, Dr. Pardo agreed to join ASC as the Veterinary Critical Care Specialist. AC ¶ 35. In that role, she "was tasked with setting up standard protocols" for ASC's ER, "recruiting employees, creating staff schedules[,] and marketing the emergency care practice." AC ¶ 37. Dr. Pardo's duties at ASC also included: treating patients, hiring and onboarding doctors and staff, establishing training and protocols, reviewing and organizing invoices and sales, "addressing performance reviews" with employees, and contributing to marketing efforts. AC ¶¶ 39–41.

Plaintiff's complaint describes several instances of alleged unlawful conduct at ASC "from the outset" of her employment. AC ¶ 45. Specifically, Dr. Pardo alleges that defendants tasked unlicensed staff with administering medicine in violation of state law, AC ¶ 50; did not properly maintain drug records in violation of state law, AC ¶¶ 60–62; failed to meet "general standards of care for veterinarians," AC ¶ 65; "used highly offensive and inappropriate language" with staff regarding euthanasia decisions, AC ¶ 91; "made insensitive and discriminatory comments about [an employee's] body and

2

posture," AC ¶ 97; and "mistreat[ed]" plaintiff after she announced that she was pregnant, AC ¶ 110. For example, in early 2023 Dr. Pardo sent an email raising concerns about the danger, stress, and unlawfulness of ASC's practice of assigning "non-credentialed assistants who had not completed the requisite schooling" for tasks such as "monitoring anesthesia, performing venipuncture[,] and administering intravenous medication" without proper supervision. AC ¶¶ 50–56.

Plaintiff alleges that she "promptly escalated" to Dr. Infernuso and ASC's Director of Human Resources ("HR"), William Welsh, several of her concerns about unlawful and unethical practices during her time at ASC. AC ¶¶ 46, 116. Plaintiff further alleges that defendants responded to her complaints with overt hostility and, ultimately, termination. AC ¶¶ 47, 48.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[2] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail," but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove

---

[2] Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

3

no set of facts which would entitle him or her to relief." *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 125 (2d Cir. 2023).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678.

Defendants move to dismiss each of plaintiff's retaliation claims for failure to state a claim. For the reasons stated below, the Court finds that plaintiff has adequately alleged retaliation in violation of Title VII, the NYSHRL, and Section 740.

## DISCUSSION

Courts in this circuit generally consider state and federal retaliation claims "in tandem" because "New York courts rely on federal law when determining claims under the New York Human Rights Law." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir. 1996); *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) ("The standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL."); *see also Thacker v. HSBC Bank USA, N.A.*, No. 22-cv-07120, 2023 WL 3061336, at *7 (S.D.N.Y. Apr. 24, 2023) ("assum[ing] without deciding" that the Title VII standard applies to Section 740 claims).

Workplace retaliation claims under Title VII and the NYSHRL are "reviewed under the burden-shifting approach of *McDonnell Douglas*." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). The first step under *McDonnell Douglas* requires a plaintiff to "establish a *prima facie* case of retaliation," after which the burden shifts to the defendant to "articulate some legitimate, non-retaliatory reason" for the adverse employment action. *Zann Kwan*, 737 F.3d at 844, 845. To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) [plaintiff] engaged in protected activity, (2) the defendant was aware of that activity, (3) [plaintiff] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023).

However, these elements are "relaxed" at the pleading stage. *Littlejohn v. City of New York*, 795 F.3d 297, 307, 316 (2d Cir. 2015); *see also Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018). In order to survive a motion to dismiss a retaliation claim, a plaintiff must "plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [plaintiff], (2) because [plaintiff] has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

To satisfy the requirement that plaintiff engaged in protected activity by opposing an employer's practice, a plaintiff need only allege "a good faith, reasonable belief that the underlying employment practice was unlawful," whether or not it actually was unlawful. *Zann Kwan*, 737 F.3d at 843.

I. Protected Activity

Federal law prohibiting retaliation in the workplace operates to "prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [a statute's] basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). While anti-discrimination law seeks "to prevent injury to individuals based on who they are, *i.e.*, their status," anti-retaliation law seeks "to prevent harm to individuals based on what they do, *i.e.*, their conduct." *Id.* The conduct protected by anti-retaliation law is defined by the underlying statutes' prohibitions—here, discrimination pursuant to Title VII and the NYSHRL, and unlawful or dangerous conduct pursuant to NYLL Section 740. *See Duplan*, 888 F.3d at 625 (equating protected activity with "oppos[ing] any unlawful employment practice").

A. *Title VII & NYSHRL Claims*

Defendants contend that plaintiff's Title VII and NYSHRL claims should be dismissed for failure to state a claim because plaintiff has not sufficiently alleged that she engaged in "protected activity" leading up to the alleged retaliation. Mot. at 20.[3] In response, plaintiff points to her allegations that she "supported, and advocated for, an employee who was being discriminated against due to his disabilities," Opp'n at 24, and "complain[ed] about the lack of" pregnancy-related accommodations, Opp'n at 26, as sufficient to constitute protected activity under federal and state discrimination laws. For the reasons stated below, the Court finds plaintiff's allegations sufficient to state a claim for retaliation under Title VII and the NYSHRL.

---

[3] Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

6

Plaintiff alleges that she was terminated from her employment at ASC against a multitude of complaints she made regarding unlawful disability and pregnancy-related discrimination by defendants. Specifically, plaintiff alleges that she "mediat[ed] a conversation" between Dr. Infernuso and another employee regarding "insensitive and discriminatory comments about [the employee's] body and posture." AC ¶¶ 97–100. The NYSHRL protects against discrimination based on disability, N.Y. Exec. Law § 291.1, which is broadly defined to include any "medically diagnosable impairment." *Ugactz v. United Parcel Serv., Inc.*, No. 10-cv-01247, 2013 WL 1232355, at *14 (E.D.N.Y. Mar. 26, 2013). Contrary to defendants' argument,[4] plaintiff's allegations that the employee's "appearance and gait were related to a serious accident he suffered when he was younger and had previously caused him severe depression and resulted in suicidal ideation," are sufficient to support an inference that she reasonably believed Dr. Infernuso's repeated discriminatory comments violated antidiscrimination law, at least at the state level. *See Karupaiyan v. CVS Health Corp.*, No. 19-cv-08814, 2021 WL 4341132, at *17 (S.D.N.Y. Sept. 23, 2021) ("[D]isability is defined more broadly under the NYSHRL . . . than it is under Title VII[.]").

Furthermore, the fact that plaintiff facilitated the conversation between Dr. Infernuso and the employee does not at this stage transform Dr. Pardo's opposition to defendants' practices into an avenue "merely to convey others' complaints."

---

4       Defendants contend that "comments about somebody's body or posture are not—by themselves—[do] not indicate . . . one way or the other whether or not that claim is based on a disability." Oral Arg. Tr. 32:22–33:10. However, plaintiff alleges that the employee's physical appearance is both the product of a disability and the source of Dr. Infernuso's comments. Moreover, as plaintiff's counsel pointed out, plaintiff need only allege that she reasonably believed the comments were based on disability. Oral Arg. Tr. at 37:5–14.

7

*Littlejohn*, 795 F.3d at 318; *see* Mot. at 23. Plaintiff's allegations—including the allegation that Dr. Infernuso told Mr. Welsh that Dr. Pardo had "'stormed' into the conference room," AC ¶ 101—raise a plausible inference that, by mediating the conversation, plaintiff was "expressing her own support for that claim" of discrimination. *Littlejohn*, 795 F.3d at 318. Defendants' arguments to the contrary regarding plaintiff's human resources capacity at ASC amount to factual disputes. *Compare* Mot. at 23 (contending that plaintiff alleged she "was responsible for handling employee relations and personnel matters") *with* Opp'n at 25 (noting that plaintiff pleaded "some administrative and managerial responsibilities"). Such factual disputes are not before the Court at the motion to dismiss stage. *See Plastic Surgery Grp.*, 64 F. Supp. 3d at 468–69 (Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint."); *see also* Oral Arg. Tr. 16:17–17:25 (draft on file with Court).

      Plaintiff also alleges that after being informed of her pregnancy, Dr. Infernuso "used [that information] as an opportunity to be vindictive." AC ¶ 109. In particular, she alleges that Dr. Infernuso changed plaintiff's work schedule and requirements in ways that worked against her "need for pregnancy accommodations," as communicated to both Dr. Infernuso and Mr. Welsh. AC ¶¶ 112–16. Title VII prohibits pregnancy-based discrimination in the workplace. *Romero v. St. Vincent's Servs., Inc.*, No. 22-cv-01476, 2023 WL 3477161, at *1 (2d Cir. May 16, 2023) ("In 1978, Congress amended Title VII and specified that the term 'because of sex' prohibits discrimination 'on the basis of pregnancy, childbirth, or related medical conditions.' 42 U.S.C. § 2000e(k)."). Plaintiff's allegations that Dr. Infernuso "amplified his mistreatment of her with a clear intent to push her out" after she announced her pregnancy, AC ¶ 110, and terminated her employment after she "reported her concerns . . . and her need for pregnancy

8

accommodations" to Mr. Welsh, AC ¶ 116, suggest that plaintiff reasonably believed defendants were violating the prohibition on sex discrimination found in Title VII. Plaintiff therefore has alleged facts to support that she engaged in protected activity under Title VII.

Given these state and federal prohibitions of discrimination based on disability and pregnancy, coupled with plaintiff's experience in the field of diversity and inclusion in the veterinary profession, the Court can reasonably infer from the complaint that plaintiff had a good-faith and reasonable belief that the conduct she complained about at ASC was unlawful. Accordingly, the Court finds that plaintiff has sufficiently alleged protected activity under Title VII and the NYSHRL.

### B.  *NYLL Section 740 Claim*

Defendants seek to dismiss plaintiff's Section 740 claim[5] on the grounds that plaintiff fails to allege retaliation based on complaints of a danger to public safety or any law, rule, or regulation. Mot. at 12–13. In opposition, plaintiff contends that her amended complaint demonstrates her reasonable belief that defendants were violating several

---

[5]  A Rule 12 motion seeks to "foreclose all paths to liability under a certain cause of action." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 343 F. Supp. 3d 94, 101 (E.D.N.Y. 2018). Nonetheless, defense counsel noted at oral argument that "there are three kind[s] of buckets that [plaintiff is] claiming that support her Labor Law claim: One is based on New York Education Law, one is on a violation of the Veterinary Guidelines, and the last is the New York State Controlled Substances Act. Which is why we're essentially moving to dismiss the last two; we're not moving to dismiss the New York Labor Law claim that's premised on a violation of the Education Law." Oral Arg. Tr. 8:7–14. However, the Motion requests dismissal of Count 5 in its entirety, *see* Mot. at 28, and defendants have provided no support for their argument that the Court should dismiss a portion of a claim based on evidentiary support where a claim is otherwise sufficiently pled. Nor have defendants argued that the complaint states more than one Section 740 claim. *See In re Am. Express Anti-Steering Rules Antitrust Litig.*, 343 F. Supp. 3d at 100 ("[A] 'claim' is a set of facts that can support liability for the defendant under a cause of action."). If defendants seek to limit discovery or to strike specific factual assertions, they must do so through the proper procedural channel.

9

specific laws, rules, and regulations, as well as engaging in practices that posed a danger to public safety. Opp'n at 12–23. For the reasons stated below, the Court finds that plaintiff has sufficiently alleged facts to support a Section 740 claim at the pleading stage.

Section 740 of the NYLL, otherwise known as New York's "whistleblower law," provides additional state law protection against retaliation for employees reporting misconduct. *Thacker*, 2023 WL 3061336, at *6. Specifically, it prohibits any employer from taking "any retaliatory action" because an employee "discloses, or threatens to disclose" a practice the employee "reasonably believes is in violation of [a] law, rule or regulation" or otherwise poses "a substantial and specific danger to the public health or safety." NYLL § 740(2)(a). Section 740 "does not require [p]laintiffs to identify the specific law, rule, or regulation" they reasonably believed their employers violated, but they must "identify the particular activities, policies or practices in which the employer allegedly engaged" that form the basis of the employee's reasonable belief. *Komorek v. Conflict Int'l, Inc.*, No. 22-cv-09467, 2024 WL 1484249, at *6 (S.D.N.Y. Mar. 29, 2024) (citing *Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*, 23 N.Y.3d 448, 452 (2014)). Furthermore, the violation of law requirement is an independent prong such that plaintiffs need not allege a legal violation that itself posed a danger to public health or safety. *Pierce v. Better Holdco, Inc.*, No. 22-cv-04748, 2023 WL 6386920, at *4 (S.D.N.Y. Sept. 29, 2023) (noting that Section 740 was amended in 2022 to broaden its scope and include retaliation based on an employee's reasonable belief that the employer is violating the law, "whether or not the violation relates to public health or safety.").

Therefore, to state a Section 740 claim, a plaintiff must allege (a) retaliation (b) based on (c) threatened or actual disclosure of her employer's activity that she "reasonably believed either (1) violated a law, rule, or regulation, or (2) posed a substantial and specific

10

danger to public health or safety." *Komorek*, 2024 WL 1484249 at *6. As to (b), a plaintiff must allege "some causal connection" between (a) and (c). *Thacker*, 2023 WL 3061336, at *6. That is, plaintiff must allege that she was retaliated against because of her whistleblower activity.

Here, plaintiff has detailed several instances that, taken as true, support a reasonable belief that defendants were violating New York laws governing education and controlled substances. Indeed, plaintiff has alleged that defendants violated three specific laws: N.Y. Educ. Law § 6700 *et seq.*; N.Y. Comp. Codes, R. & Regs. tit. 10, § 80.48; and N.Y. Pub. Health Law § 3322 (the "Controlled Substances Act"). AC ¶¶ 51–56; 60–64. These allegations moot defendants' argument that plaintiff's reports of conduct in violation of state guidelines for veterinarians are insufficient to state a Section 740 claim, Mot. at 16–18. Whether or not the Court considers violations of the guidelines to constitute violations of a law, rule, or regulation, plaintiff's allegations as to violations of numerous other, specific laws are sufficient at this stage of the case.

Also, contrary to defendants' argument, Oral Arg. Tr. 31:1–16, this specificity in the complaint does not work to undermine plaintiff's Section 740 claim in light of the fact that she was not required to identify any such laws. *Komorek*, 2024 WL 1484249, at *6. To the extent it has merit and is not simply a factual dispute, defendants' contention that plaintiff failed to allege a reasonable belief because she did not act "immediately" to "investigate, correct, or report" those violations, Reply at 8, is contradicted by plaintiff's allegations that she addressed several concerns with Dr. Infernuso "immediately." *See, e.g.*, AC ¶ 62.

Plaintiff has also sufficiently alleged that she reasonably believed defendants' mishandling of fentanyl—a highly addictive and dangerous opioid—posed a danger to

11

public health and safety. As the Supreme Court has stated, the "opioid epidemic represents one of the largest public health crises in this nation's history." *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2078 (2024). Plaintiff's allegations primarily relate to incorrect administration of fentanyl in a manner that prevented proper record keeping. AC ¶¶ 62–64.

The Court can reasonably infer that the administration by unlicensed staff of a drug "known for its high potential for addiction and overdose," *United States v. Brooks*, 685 F. Supp. 3d 476, 479 (E.D. Mich. 2023), may pose a threat to public health. This is especially true here, where plaintiff has alleged multiple examples that, taken together, suggest a recurring practice at ASC with the potential to pose a danger to the public at large. *See Villarreal v. Montefiore Med. Ctr.*, No. 20-cv-00012, 2020 WL 5518382, at *3 (S.D.N.Y. Sept. 14, 2020) (noting that specific instance of patient neglect "attributable" to a "lack of training and discipline" could "pose[] § 740's requisite threat to the health or safety of the public at large," in part if it was "ongoing or liable to recur"). Plaintiff may ultimately be required to more clearly connect the practices of allowing unlicensed staff to administer fentanyl and engaging in improper record keeping with threats to public health and safety, but she has satisfied her burden to allege that she reasonably believed defendants' conduct posed a public health concern.

Accordingly, the Court finds that plaintiff has sufficiently stated protected activity under NYLL § 740.

   II.   <u>Adverse Action</u>

To state a retaliation claim, a plaintiff must also allege that she "was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse." *Carr*, 76 F.4th at 180. In the employment context, an action is adverse if it "well might have

12

dissuaded a reasonable worker from making or supporting a charge of" unlawful activity, as defined in the underlying statute, against her employer. *Id.* (quoting *Burlington*, 548 U.S. at 68). Whether an employer's action is adverse is often "a heavily fact-specific, contextual determination." *Connelly v. Cnty. of Rockland,* 61 F.4th 322, 325 (2d Cir. 2023).

Defendants do not challenge that plaintiff has alleged adverse actions. Oral Arg. Tr. 18:12–17. Indeed, plaintiff has alleged termination, a paradigmatic adverse employment action. AC ¶ 121. There is no question the idea of being fired might "dissuade" a reasonable employee from reporting discrimination under Title VII or conduct prohibited by Section 740. *See Burlington*, 548 U.S. at 57.

Plaintiff also alleges changes to her terms of employment. AC ¶¶ 76–78, 86. For example, plaintiff alleges that, in retaliation for her reports of misconduct, Dr. Infernuso later "decreased the amount of compensation" Dr. Pardo "expected to earn" at ASC, "suggested that her job duties would extend far beyond what she had understood" from prior negotiations, and indicated that her bonus would be contingent on "never before discussed performance indicators." AC ¶¶ 85–89. A reasonable employee might be dissuaded from raising her concerns about discriminatory or otherwise unlawful conduct if those concerns would be met with indications that she would be required to work more for potentially less pay. *See Thacker*, 2023 WL 3061336, at *8 (noting that a "bonus reduction constitutes a . . . paradigmatic materially adverse change" that would satisfy "Section 740's threshold" for retaliation).

Accordingly, plaintiff has sufficiently alleged that the breakdown in her employment contract negotiations and her ultimate termination from ASC are both adverse actions that may support a retaliation claim pursuant to state and federal law.

13

III.   Causation

Plaintiff has also sufficiently alleged that defendants engaged in retaliatory conduct because plaintiff opposed alleged discrimination under Title VII and the NYSHRL, as well as unlawful conduct under Section 740. To establish causation, a plaintiff must allege that the protected activity was a "but-for" cause of the retaliation. *Vega*, 801 F.3d at 90–91. Indeed, a plaintiff must allege that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91.

Causation can be supported at the pleading stage with allegations of (i) "direct evidence of retaliatory animus" or (ii) indirect evidence of causation "through temporal proximity to the protected activity" or "a backdrop of continuing antagonism and frustration of [] professional ambitions." *Duplan*, 888 F.3d at 625–26. Indirect support of causation can be established "by showing that the protected activity was closely followed in time by the adverse employment action." *Tafolla v. Heilig*, 80 F.4th 111, 125–26 (2d Cir. 2023). Although the Second Circuit "has not drawn a bright line defining the outer limits beyond which a temporal relationship is too attenuated to establish causation," it has found that "a period of several months," including an eight-month gap, can support causation. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 277 (2d Cir. 2023) (citing *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980)).

Defendants terminated plaintiff in May 2023, roughly eight months after she joined ASC. *See* AC ¶ 121. More specifically, plaintiff's allegations describe a period of less than one month between her May termination and the April meeting regarding Dr. Infernuso's discriminatory comments based on another employee's actual or perceived disability, AC ¶¶ 97–101, and Dr. Pardo's April pregnancy announcement, AC ¶ 107. Furthermore, plaintiff's allegations suggest months of hostility in response to her voicing

14

myriad concerns "[f]rom the outset" of her employment at ASC. *See* AC ¶ 45. This pattern, as alleged by plaintiff, suggests a "drumbeat of retaliatory animus," *Duplan*, 888 F.3d at 626, toward Dr. Pardo. From these allegations, the Court can reasonably infer that plaintiff's opposition to defendants' alleged discrimination based on disability and pregnancy caused defendants' alleged retaliatory actions.

Furthermore, plaintiff has alleged facts to support a causal link between her reports of misconduct and Dr. Infernuso's actual or suggested changes to her terms of employment, as discussed *supra*. Plaintiff provides two specific examples, one from January 2023 and another from mid-March 2023, regarding her reports to Dr. Infernuso about unlicensed staff administering medication. AC ¶¶ 54–56. These incidents coincided with the "early 2023" contract negotiation breakdown, AC ¶¶ 85–89, and occurred just a few months prior to her May termination, AC ¶ 121. These allegations are sufficient at the motion to dismiss stage to support the causal connection required to plead a Section 740 claim.

## CONCLUSION

For the reasons stated above, the Court **DENIES** defendants' Motion.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　 */s/ Natasha C. Merle*
　　　　　　　　　　　　　　　　　　　　　　　NATASHA C. MERLE
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:　　　September 24, 2024
　　　　　　Brooklyn, New York

15